# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

JOSEPH CABRERA SABLAN,
          *Appellee-Intervenor,*

v.

JAMES NINETE LEON GUERRERO,
          *Defendant-Appellant.*

No. 11-10577

D.C. No.
1:08-cr-00259-
PMP-2

OPINION

Appeal from the United States District Court
for the Eastern District of California
Philip M. Pro, District Judge, Presiding

Argued and Submitted
April 16, 2012—San Francisco, California

Filed August 31, 2012

Before: Stephen Reinhardt and Mary H. Murguia,
Circuit Judges, and David A. Ezra, District Judge.*

Opinion by Judge Murguia;
Dissent by Judge Reinhardt

---

*The Honorable David A. Ezra, District Judge for the U.S. District
Court for Hawaii, sitting by designation.

**COUNSEL**

Iris Roe Lee and Richard Glenn Novak, Law Offices of Richard G. Novak, Encino, California, for the appellant.

Tivon Schardl, Federal Public Defender's Office, Sacramento, California, for the appellee-intervenor.

Dawrence Wayne Rice, Jr. and Elana Landau, Office of the United States Attorney, Fresno, California, and Bonnie Hannan, Department of Justice, Washington, DC, for the appellee.

**OPINION**

MURGUAI, Circuit Judge:

Defendant-Appellant James Ninete Leon Guerrero and his co-defendant Jose Cabrera Sablan are charged with the murder of a United States correctional officer. The Government has filed a notice of intent to seek the death penalty. This is an interlocutory appeal of the district court's order denying Guerrero's motion to seal his pretrial competency proceedings and related filings. We conclude that we do not have jurisdiction over the appeal pursuant to either the collateral order doctrine or a petition for a writ of mandamus, and therefore dismiss.

## I. Background

On August 14, 2008, Guerrero and Sablan were indicted for first-degree murder, first-degree murder of a United States correctional officer, and murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. §§ 1111(a), 1114, and 1118. The Government filed a notice of intent to seek the death penalty.

In April 2011, Guerrero lodged with the district court for under seal filing a Motion for Hearing to Determine Competency of Defendant James Ninete Leon Guerrero, pursuant to 18 U.S.C. § 4241(a). Attached to the motion are a Competency Evaluation Report and a Neuropsychological Evaluation

Report, both of which were prepared by a neuropsychologist. The Government subsequently filed a motion for a psychiatric or psychological examination of Guerrero to determine his competence to stand trial, which the district court granted. A Bureau of Prisons forensic psychologist submitted a forensic evaluation of Guerrero's competence to stand trial.

Guerrero then lodged with the district court for under seal filing a Motion to Seal Competency Proceedings. Attached to the motion are six exhibits, including a 27-page "Social History Summary" of Guerrero and a 77-page memorandum chronicling defense counsels' interactions with Guerrero. Guerrero requested that the district court seal the evidentiary hearing, all exhibits received into evidence or referred to by witnesses at the hearing, any post-hearing briefs, and any detailed findings of fact issued by the district court concerning Guerrero's competency. The Government took no position in response to the motion to seal. Sablan opposed the motion.

The district court denied Guerrero's motion to seal the competency proceeding and related documents, both with respect to the general public's access and Sablan's access specifically, unsealed the Motion for Hearing to Determine Competency, and scheduled Guerrero's competency hearing.[1] This appeal followed. We permitted Sablan to file an answering brief before us. Guerrero requests that we direct the district court to conduct Guerrero's competency proceeding and file all documents related to it under seal, while preserving co-defendant Sablan's access. We do not reach the merits of the district court's ruling because we dismiss for lack of jurisdiction.

---

[1]The district court vacated the competency hearing pending resolution of this appeal.

## II. Jurisdiction

**[1]** We first must address whether we have jurisdiction to review this non-final judgment, pursuant to either the collateral order doctrine or a writ of mandamus. Guerrero and the Government assert that we do have jurisdiction, while Sablan argues we do not. The jurisdictional questions appear to be matters of first impression in this circuit, as well as the other circuit courts.

### A. Collateral Order Doctrine

**[2]** Generally, an appellate court may hear appeals only from a district court's final decision. 28 U.S.C. § 1291; *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) ("Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal quotation marks omitted)). However, "the collateral order doctrine accommodates a small class of rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). Such decisions are " 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 603 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). In construing the limits of the narrow collateral order rule, the Supreme Court has recognized that "[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Id.* at 605 (internal quotation marks omitted).

Three requirements must be met before we exercise collateral order review. The order must: " '[1] conclusively determine the disputed question, [2] resolve an important issue

completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.' " *Will*, 546 U.S. at 349 (quoting *P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

The first prong is satisfied in this case. The district court's denial of Guerrero's motion to seal conclusively determined the disputed question of whether to allow public access to Guerrero's competency proceedings and related documents. *See Islamic Shura Council of S. Cal. v. Fed. Bur. of Invest.*, 635 F.3d 1160, 1164 (9th Cir. 2011) ("The district court's decision to unseal an order conclusively determines the disputed question of whether to make the order a matter of public record.").

**[3]** The second prong, that the order resolve an important separate issue, is also established here. There is no dispute that the issue of whether the competency proceedings and associated materials are unsealed is "completely separate" from the merits of the Government's case against Guerrero. *See In re Sealed Case*, 237 F.3d 657, 664-65 (D.C. Cir. 2001) (holding that sealing issue is "completely separate from the underlying subpoena enforcement action."). The district court's order on the motion to seal does not affect the Government's case or Guerrero's defenses at trial. The proceedings and materials that Guerrero seeks to be sealed have been disclosed to the Government, and the district court issued a protective order providing that information obtained by the Government in relation to the competency evaluation is not admissible against Guerrero in his criminal proceeding, subject to certain exceptions.

**[4]** The issue is also an "important" one. We note that motions to seal competency proceedings are very rare. We have identified only one (unpublished) district court ruling on such a motion, and no circuit court decisions. *See United States v. Curran*, 2006 WL 1159855 (D. Ariz. May 2, 2006) (unpublished). Nevertheless, Guerrero's interests in the confi-

dentiality of attorney-client communications, a fair trial, and privacy are clearly important to him.

Moreover, we must also consider the alternative possibility of the district court granting Guerrero's motion to seal. Had Guerrero succeeded below, perhaps the Government would seek interlocutory review.[2] The public's interest in open criminal proceedings is well-established and could present an important issue on appeal. *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1985) ("*Press-Enterprise I*") ("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").

**[5]** The third prong of the collateral review order test is whether a decision is effectively unreviewable on appeal from a final judgment. *Will*, 546 U.S. at 349. An effectively unreviewable decision is one that "would imperil a substantial public interest or some particular value of a high order." *Mohawk*, 130 S. Ct. at 605. We do not consider the "individualized jurisdictional inquiry" that Guerrero's case presents, but instead focus on the "entire category to which a claim belongs." *Id.* In other words, we may only exercise collateral order review if all orders resolving motions to seal competency proceedings cannot "be adequately vindicated by other means." *Id.* We are cautious in applying the collateral order doctrine, "because once one order is identified as collateral, *all* orders of that type must be considered collaterally." *C.I.R. v. JT USA, LP*, 630 F.3d 1167, 1172 (9th Cir. 2011) (emphasis added).

---

[2]Had the district court ordered the competency hearings sealed, a third party, such as a newspaper, would not have had standing to appeal. *See United States v. Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982) ("This circuit has not recognized standing to appeal in persons such as Times Mirror and Blake who, though denied access to the proceedings, were not parties to the case below.").

Guerrero argues that an order denying a motion to seal is effectively unreviewable on appeal because once "the cat is out of the bag," there is no going back. Guerrero contends that because the information released can never be secret again, the sealing of competency proceedings implicates the attorney-client privilege that attaches to some of the related documents, his right to a fair trial, and his privacy interests. We find these arguments unpersuasive.

Guerrero's reliance on attorney-client privilege is largely foreclosed by the Supreme Court's decision in *Mohawk*, 130 S. Ct. at 609. In a wrongful termination action, Mohawk attempted to bring a collateral order appeal of the district court's order that Mohawk disclose information about plaintiff Carpenter's pre-termination interview with Mohawk's counsel. *Id.* at 603-04. The district court had ruled that Mohawk had waived attorney-client privilege. *Id.* The Supreme Court held that decisions adverse to the attorney-client privilege, as a class, are not effectively unreviewable on appeal of a final judgment, and therefore not subject to collateral order review. *Id.* at 606. The Court held that "the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs." *Id.* at 608 (internal quotation marks and citation omitted).

**[6]** The Supreme Court went on to hold that the important right to attorney-client confidentiality is sufficiently protected by postjudgment appeals: "Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 606-07. The Court further explained that deferring review until final judgment will not chill attorney communications because "clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal." *Id.*

at 607. Moreover, parties must already account for the real possibility of disclosure due to a misapprehension of the privilege's scope, waiver, or the crime-fraud exception. *Id.*

There being no discernible harm to the public interest, the Supreme Court further held that the remaining harm to the individual litigant from an erroneous disclosure of confidential communications could be adequately, if imperfectly, remedied by review after final judgment. *Id.* at 607-08. The Court identified the availability of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and the extraordinary writ of mandamus as "safety valve" mechanisms for the prompt corrections of serious errors. The Court further recognized the possibility of refusing disclosure and appealing the district court's imposition of sanction, as well as the availability of protective orders to limit spillover effects of disclosure. *Id.* Finally, the Court explained that the need to ensure that the class of collaterally appealable orders remains narrow has acquired special force with the recent "enactment of legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Id.* at 609 (quoting *Swint v. Chambers County Com'n*, 514 U.S. 35, 48 (1995)).

**[7]** *Mohawk* thus establishes that, at least in the civil context, adverse attorney-client privilege rulings are not effectively unreviewable on appeal. We conclude that the reasoning in *Mohawk* also applies to orders denying motions to seal competency hearings in criminal proceedings.

As with civil litigation, we doubt that the possibility of open competency proceedings would chill criminal defendants' communications with their attorneys, particularly given the gravity of the punishment that many defendants face. Although an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or defiance of a discovery order is not available in a criminal proceeding, a writ of mandamus may sometimes be, as is a protective order that limits the scope of disclosure

and the admissibility of the communications in future criminal proceedings. And in the last resort, appellate courts can remedy the improper disclosure of privileged material by vacating the judgment.

Guerrero also cites to our post-*Mohawk* holding in *Islamic Shura Council*, 635 F.3d at 1164. In *Islamic Shura Council,* we considered an interlocutory appeal of a district court's decision to unseal an order regarding documents requested pursuant to the Freedom of Information Act ("FOIA"). We explained that once the order was unsealed, "the unsealing cannot be reversed," and any later government appeal would be moot. *Id.* at 1164.[3] However, *Islamic Shura Council* is readily distinguishable because in that case, the government sought to prevent the disclosure of sensitive law enforcement and national security information that the government contended could be properly withheld under FOIA. *Id.* at 1165. Our conclusion that later review could not ameliorate the government's disclosure of such sensitive information does not suggest that public access to competency proceedings is also effectively unreviewable on appeal. Neither the harm or redressability of improper disclosure of documents related to national security is comparable to any concerns raised by public access to a criminal defendant's competency proceedings.

Further, any alleged incursions on criminal defendants' rights to privacy and a fair trial do not render the unsealing order effectively unreviewable on appeal such that collateral order review would be justified. While these interests are significant, we do not see how they would be substantially imperiled by open competency proceedings. It is possible that the press might report on once private details of a criminal defendant's life that are disclosed at the proceeding and in

---

[3]We ultimately did not decide whether the second prong, resolution of an important issue separate from the merits, was satisfied and did not assert jurisdiction under the collateral order doctrine. *Islamic Shura Council,* 635 F.3d at 1164.

related documents. However, there is no authority for the proposition that a defendant's preference that his personal history be kept personal justifies denial of public access to criminal proceedings. Further, countless competency proceedings have been held publicly without compromising the fairness of subsequent trials. Also, as the district court stated, alternatives to sealing, such as careful screening of prospective jurors and moving the location of the trial, are available to protect defendants' right to a fair trial.

Like orders denying motions to seal competency proceedings, orders granting these motions are also not effectively unreviewable on appeal. Third parties challenging orders denying public access to proceedings or documents do not have standing to appeal directly, and therefore could not seek collateral order review. *See In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 373 (9th Cir. 2002) (citing *United States v. Sherman*, 581 F.2d 1358, 1360 (9th Cir.1978)) (newspaper, which was not a party to criminal action, lacks standing to appeal district court order sealing documents). However, they may petition this Court for a writ of mandamus. *See, e.g., Oregonian Pub. Co. v. U.S. Dist. Court.*, 920 F.2d 1462 (9th Cir. 1990) (granting petition for writ of mandamus to direct release of plea agreement documents); *Associated Press v. U.S. Dist. Court*, 705 F.2d 1143 (9th Cir. 1983) (granting petition for writ of mandamus to direct unsealing of pretrial documents). Therefore, even if the district court had granted Guerrero's motion, mandamus review is available and so the order would not be effectively unreviewable.

**[8]** We conclude that any benefits of immediate appeal of a district court's order resolving a motion to seal competency proceedings and related documents is not "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk*, 130 S.Ct. at 605. Every year our nation's state and federal courts conduct thousands of competency evaluations. *See* Jason R. Marshall, *Two Standards of Competency Are Better than One*: *Why Some Defendants Who*

*Are Not Competent To Stand Trial Should Be Permitted To Plead Guilty*, 37 U. Mich. J .L. Reform 1181, 1186 (2004) (stating that an estimated 25,000 to 60,000 competency evaluations are performed annually in the United States). The lack of appeals to date of orders resolving motions to seal these proceedings suggests that trial courts are effectively and efficiently balancing defendants' interest in privacy with the public's interest in access. We decline to open the door to a potential inundation of piecemeal appeals of these rulings, which would delay district court litigation and burden our Court. *See id.* at 608.

**[9]** The class of claims can be adequately vindicated by the possibility of a writ of mandamus, rigorous juror screening, possible relocation of the trial, protective orders, and if appropriate, post-judgment relief. Therefore, "the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." *Id*. at 605 (internal quotation marks and alterations omitted).

## B.    Writ of Mandamus

In the alternative, Guerrero petitions for a writ of mandamus. The writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380 (2004) (internal quotations marks omitted). We consider five factors in determining whether mandamus relief is appropriate: (1) whether the petitioner has no other means to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). "[T]he absence of the third

factor, clear error, is dispositive." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (internal quotation marks and citation omitted). Guerrero has the "burden of showing that his right to the issuance of the writ is clear and indisputable." *Bauman*, 557 F.2d at 656 (internal quotation marks and alterations omitted). The district court did not clearly err in denying Guerrero's motion to seal, and therefore Guerrero cannot satisfy the requirement for a writ of mandamus.

As we review for clear error on a petition for mandamus, we need not resolve the underlying legal issue of public access to competency proceedings. So long as we are not firmly convinced that the district court was wrong, "we cannot hold the district court's interpretation to be clearly erroneous, and thus we cannot issue the writ, even though the district court's interpretation might be overruled later on direct appeal." *DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 936 (9th Cir. 2000). Accordingly, we consider briefly the relevant law to determine only if the district court clearly erred.

**[10]** Whether there is a public right of access to criminal competency proceedings is a matter of first impression. *See United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998) (declining to resolve media's First Amendment claim of access to defendant's court-ordered psychiatric competency report). We begin with the press and public's "presumed right of access to court proceedings and documents" under the First Amendment. *Oregonian Pub. Co.*, 920 F.2d at 1465 (citing *Press-Enterprise I*, 464 U.S. at 510). The Supreme Court has explained that openness enhances both the fairness of a criminal trial and the appearance of fairness that is essential to public confidence in the system. *Press-Enterprise I*, 464 U.S. at 508. To determine whether there is a right of access to a particular kind of hearing, we look to the Supreme Court's two-part "experience" and "logic" test. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). If a proceeding satisfies the test, a qualified First Amendment right of access arises, which can be overcome "only by an

overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 9.

### 1. Experience

The "experience" prong of the First Amendment access test considers "whether the place and process have historically been open to the press and general public." *Id.* at 8. The experience requirement "does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that *type* or *kind* of hearing throughout the United States.' " *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147, 150 (1993) (per curiam) (quoting *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 323 (1st Cir. 1992) (emphasis in original)).

**[11]** We are aware of only one (unpublished) federal court decision discussing whether there is a First Amendment right of access to a competency proceeding, *United States v. Curran*, 2006 WL 1159855 (D. Ariz. May 2, 2006) (unpublished).[4] In *Curran*, the district court found that mental competency hearings have historically been open to the public absent specific facts supporting closure. *Id.* at *2. The court relied primarily on four state court cases holding that mental competency proceedings should be open to the public.[5] More-

---

[4]The District Court for the District of Idaho denied a media motion to unseal a competency evaluation report, but did not apply the "experience" and "logic" test in making its ruling. *In re Spokesman-Review*, 2008 WL 3084252, *4-5 (D. Idaho Aug. 05, 2008) (unpublished). The District Court for the Eastern District of Virginia, in deciding whether to close a hearing concerning a defendant's competency to waive counsel, noted that "[c]ompetency hearings are routinely held in open court in this district." *United States v. Moussaoui*, 2002 WL 1311734 at *1 (E.D. Va. June 11, 2002) (unpublished).

[5]*See Miami Herald Pub. Co. v. Chappell*, 403 So.2d 1342 (Fla. Ct. App. 1981) (holding that competency proceedings should be open); *Soc'y of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1178 (Utah 1987) ("pretrial competency proceedings in criminal cases may be closed only upon a

over, we are persuaded by Guerrero's failure to identify any court's restriction of access to competency hearings. Our own research reveals no decision denying open access to competency proceedings, and one additional state court decision granting access. The district court did not clearly err in concluding that competency proceedings of a criminal defendant have historically been open to the public and press.

## 2. Logic

**[12]** The "logic" element inquires "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. The district court stated that the value of ensuring public access to criminal proceedings is well settled and that nothing in federal law provides that competency hearings should be closed to the public. We agree.

Our conclusion is informed by First Amendment access rights to other criminal proceedings. Public access to criminal trials and juror selection is "essential to the proper functioning of the criminal justice system." *Id*. at 11-12. Additionally, the Supreme Court has held that there is a qualified First Amendment right of access to a preliminary hearing in California, as it is "often the final and most important step in the criminal proceeding." *Id.* at 12. We have gone further, holding that

---

showing that access raises a realistic likelihood of prejudice to the defendant's right to a fair trial."); *Cheyenne K. v. Superior Court*, 256 Cal. Rptr. 68, 71 (Cal. App. 1989) (holding that the public may attend a competency hearing for a minor charged with murder unless the minor establishes a reasonable likelihood of substantial prejudice to the right to receive a fair and impartial trial); *In re Times-World Corp.*, 488 S.E.2d 677, 682 (Va. App. 1997) (holding that the First Amendment and Virginia Constitution grant the media a qualified right to attend competency proceedings); *but see People v. Atkins*, 514 N.W. 2d 148 (Mich. 1994) (finding no qualified right of access to criminal mental competency reports that have not been admitted into evidence).

there is a general First Amendment right of access to pretrial hearings and documents. *See Associated Press*, 705 F.2d at 1145. In contrast, grand jury proceedings are a "classic example" of "government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9.

An adversarial competency hearing better resembles a criminal trial or a preliminary hearing than it does a grand jury proceeding. In competency proceedings, a defendant has the right to be represented by counsel and the opportunity to testify, present evidence, subpoena witnesses, and to confront and cross-examine witnesses. 18 U.S.C. § 4247(d). Moreover, like preliminary hearings, competency hearings may determine the critical question of whether a criminal defendant will proceed to trial. A court's decision on whether a defendant is able to understand the nature of the proceedings against him and whether he is able to assist counsel in his defense is a critical part of the criminal process. Allowing public access to a competency hearing permits the public to view and read about the criminal justice process and ensure that the proceedings are conducted in an open, objective, and fair manner. Indeed, public confidence in the judicial system is especially significant where a defendant accused of a violent felony is not tried because he was found incompetent.

**[13]** Accordingly, the district court did not clearly err in concluding that the logic prong of the First Amendment access test has been satisfied. As the experience and logic factors are both met, the district court did not clearly err in finding a qualified First Amendment right of access to mental competency hearings.

### 3. Guerrero's rights

A qualified First Amendment right of public access is not absolute, but rather may accede to the rights of the accused. We therefore proceed to the district court's consideration of

whether Guerrero's individual rights override the public's qualified First Amendment right of access. The presumption of access may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510. Closing a hearing requires that: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Pub. Co.*, 920 F.2d at 1466.

The district court held that Guerrero had not shown a substantial probability of irreparable harm if the competency proceedings are not sealed, or that there are no viable alternatives. This holding is not clearly erroneous.

### a. Fair Trial

Guerrero argues that public disclosure of the detailed content of the competency evaluations and the bases for opinions expressed therein will violate his right to a fair trial. According to Guerrero, publicity of his case is significant. At least 85 news articles have been written about the crime and case by two news organizations based within the district, and newspapers elsewhere in the country have carried the stories.

[14] Closure may be ordered on the basis of a defendant's Sixth Amendment right to a fair trial only if, "first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise II*, 478 U.S. at 13-14.

We have made clear that "pervasive publicity, without more, does not automatically result in an unfair trial." *Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513, 1517 (9th Cir.

1988). In assessing prejudicial effect, we look to the publicity's " 'capacity to inflame and prejudice the entire community.' " *Id.* (quoting *CBS v. U.S. Dist. Court*, 729 F.2d 1174, 1180 (9th Cir. 1983)). "The publicity must create a pattern of deep and bitter prejudice throughout the community." *Id.* (internal quotation marks and alterations omitted).

**[15]** The district court observed that while there has been some pretrial publicity, it was not so extensive or current that juror screening and possible relocation could not provide a fair trial. The vast majority of articles submitted by Guerrero are from only two media outlets, which are located near the penitentiary where the crime occurred. Guerrero has made no showing that any publicity from the disclosures at the competency hearing would generate "deep and bitter prejudice" through the "entire community." *Id.* Moreover, he has not shown an open competency proceeding is likely to generate significant additional publicity. To the extent that alternatives to closure of the competency hearing are necessary, juror screening and relocation of the trial are available. *See Press-Enterprise II*, 478 U.S. at 15 (stating that voir dire allows the court to identify any individual jurors "whose prior knowledge of the case would disable them from rendering an impartial verdict."). The district court's conclusion that Guerrero's right to a fair trial does not overcome the public's First Amendment right of access is not clearly erroneous.

#### b.   Privacy

Guerrero also contends that the public right of access to the competency proceeding is outweighed by his right to privacy. Guerrero notes that the evaluation reports describe his mental illnesses and cognitive defects, his academic record as a child, his social history, physical and sexual abuse he experienced, and the names of Guerrero's minor daughter and other relatives. The district court stated that to the extent that Guerrero's privacy rights are cognizable, they are largely

surrendered by the fact that he has placed his competency at issue.

**[16]** We do not agree with the district court that a defendant surrenders his right to privacy because he may not be constitutionally fit to stand trial. The Supreme Court has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process." *Cooper v. Okla.,* 517 U.S. 348, 354 (1996) (internal quotation marks omitted). The constitutional imperative to not try incompetent defendants does not itself deprive possibly incompetent individuals of their privacy rights. Moreover, courts have given weight to the privacy interests of defendants when considering access to judicial proceedings and related documents. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) (considering the privacy interest of individuals identified in search warrants and noting that "[o]ther courts have also taken account of the privacy rights of individuals when considering access requests to judicial documents.").

**[17]** However, even if the privacy rights of Guerrero and others named in competency documents constitute a compelling interest, there are alternatives to full closure of the competency proceedings that can protect these interests. Courts may issue protective orders, redact names from reports, and restrict the use of other people's names during the hearing. Therefore, there are alternatives to closure and it was not clear error to conclude that Guerrero's privacy interests do not override the First Amendment right of access.

### c. Attorney-client privilege and work product

**[18]** Guerrero argues that a public competency hearing would pierce the confidentiality that protects his communications with his attorney and his attorney's work product. The district court found that Guerrero waived the privilege to the extent that he has put his competency at issue. As with Guerrero's right to privacy, we disagree that Guerrero has waived

the attorney-client privilege because he may not be fit for trial. However, Guerrero's interest in maintaining the confidentiality of his attorney communications does not override the public's interest in open proceedings.

**[19]** Guerrero has not shown that his interest in maintaining the confidentiality of his attorney communications would be significantly harmed if the proceeding is open. *See Oregonian Pub. Co.*, 920 F.2d at 1466 (requiring harm to a substantial interest and the absence of any alternatives before a proceeding may be closed). Guerrero has already agreed to share the privileged documents with the Government and his co-defendant, and the district court has issued an order that prohibits the use at trial of privileged information disclosed during the competency hearing. Because Guerrero's confidential communications will not be used against him in a criminal proceeding, his primary interest in the privilege is protected. Any distress he may feel through public disclosure of information presented at the competency hearing does not overcome the public's First Amendment right of access. *Id.* at 1465 (First Amendment right "can be overcome only by an overriding right or interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (internal quotation marks omitted)).

**[20]** In denying the petition for mandamus, we do not decide whether the district court correctly denied Guerrero's motion to seal competency proceedings. Rather, "[w]hether or not the district court's interpretation ultimately withstands appeal, we cannot find it 'clearly erroneous' as that term is used in the mandamus analysis." *In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011). The district court did not clearly err in concluding that Guerrero's asserted interests in the attorney-client privilege, a fair trial, and privacy do not overcome the public right to open proceedings. Because the district court did not commit clear error, we do not reach the four other factors necessary for granting mandamus. Guerrero has

not established an indisputable right to the issuance of the writ, and we deny the petition for mandamus.

Because we do not have jurisdiction under either the collateral order doctrine or mandamus, the appeal is **DISMISSED**.

---

REINHARDT, Circuit Judge, dissenting:

We consider for collateral review, the class of cases involving appeals from orders granting or denying motions to seal competency proceedings. I would hold that the class satisfies each of the three requisite factors for establishing jurisdiction under the collateral order doctrine, *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541 (1949), and that we therefore have jurisdiction over all such appeals, including Guerrero's appeal in this case. The majority recognizes that this class of cases meets the first and second *Cohen* factors. It errs on the third *Cohen* factor, however, when it focuses on attorney-client privilege, undervaluing the importance of First Amendment freedoms and privacy at stake in each appeal from a criminal case.

It is sometimes easiest to examine the class by using the illustration of the case before the court. I will therefore begin my analysis doing so here. In this death penalty case, the defendant seeks to seal the record of his competency hearing, at least until completion of his criminal proceeding. The district judge denied his request. Now, the majority refuses to permit him to appeal that ruling until after all the harm he seeks to avoid has been done. The majority's holding eliminates any opportunity for Guerrero to protect his own privacy rights or the rights of those whose personal histories will be revealed during the course of his competency hearing. Even more important, the majority opinion, by holding that we lack jurisdiction over appeals from orders granting or denying motions to seal competency hearings, deprives future parties

— defendants as well as others whose private lives are intertwined with theirs — from appealing the improvident denial of sealing orders.

Guerrero's past, like that of so many death-eligible defendants, includes a lengthy and sordid history of varied forms of abuse and mental difficulties; a history that will be revealed in the course of his competency hearing. The allegations which will involve family members and others whose lives are intertwined with Guerrero's will not be subject to legal procedures designed to ensure their accuracy or validity.

Guerrero stands accused of a sensational crime that has elicited intense public interest and concern; a factor common to most, if not all capital cases. In Guerrero's case, the victim's murder has been the subject of substantial, and continuing, news coverage, and was the impetus for a federal policy change authorizing the carrying of pepper spray canisters by guards in federal prisons. In death penalty cases, we are often faced with a district court's need to consider sensitive, private information even before proceeding to trial, as well as a competing, and pressing, concern for maximum public disclosure. By contrast, neither of these factors is ordinarily present in run-of-the-mill non-capital cases. Pre-trial competency hearings in non-capital cases are rare and when they do occur they usually simply involve a diagnosis of the defendant's present mental state rather than an exhaustive examination of his entire set of life experiences, especially alleged sexual abuse or torture, frequently by family members.

As a result of the majority's decision, Guerrero will have no opportunity to challenge the district court's determination that the public, including potential jurors, have an unlimited right to review every aspect of his personal history as a result of the conduct of his court-ordered pre-trial competency proceeding. Moreover, the ramifications of this decision extend far beyond Guerrero's individual appeal because the majority has effectively eliminated our jurisdiction over any appeal

from an order denying a motion to seal a competency hearing, regardless of the weight of the privacy interests at stake.

In determining the question of whether we have jurisdiction over the order denying Guerrero's motion to seal his hearing we must also consider the converse: whether this court has jurisdiction over a district court's order *granting* a party's motion to seal. If a party seeking closure prevails in the trial court, then the party opposing closure and seeking interlocutory appeal will most likely do so by asserting the public's constitutional right to access such proceedings — as the co-defendant Sablan did in this case.[1] The competing interests at stake — public access and individual privacy — remain the same regardless of which party prevails in the district court, and the outcome of an erroneous judgment would result in a similarly irreparable harm.

In Guerrero's case, the party seeking appellate review represents the individuals whose privacy is threatened; but those interests are directly counterposed to the public's right of access. Although the public's First Amendment interests may have prevailed in the district court in this instance, such will not always be the case. Had the district court conducted the necessary balancing test and determined that the relevant considerations weighed in favor of sealing Guerrero's competency hearing, then the party seeking review would be representing the interests of the public and asserting its and their First Amendment rights.

Whether this court has jurisdiction over appeals from decisions regarding sealing orders cannot depend on whether the

---

[1]Although the trials were severed and Sablan was no longer a party to Guerrero's underlying criminal proceeding, a co-defendant (or even the defendant himself if the government is the party seeking closure) could assert this First Amendment right if another party sought to have some or all of the material submitted in the course of the competency proceeding sealed.

particular appellant is likely to win or lose on the merits of his appeal once jurisdiction is exercised. If we were to recognize jurisdiction over Guerrero's claim and proceed to the merits, we would then conduct the separate analysis necessary to determine whether sealing is the proper result in this instance. First, we would determine the as yet unanswered question whether the qualified First Amendment right of access extends to pre-trial competency hearings. If it does, we would then consider whether a failure to seal would give rise to compelling interests on both sides, including whether it would affect Guerrero's right to a fair trial. Should Guerrero's interests as a whole outweigh the public's First Amendment right, the court would then determine, in the individual case, whether there are alternatives to sealing that will effectively protect these rights. *See Phoenix Newspapers, Inc. v. U.S. Dist. Ct. of Ariz.*, 156 F.3d 940 (9th Cir. 1998); *United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982). Only if not would a sealing order be the proper remedy.

Guerrero's case may or may not present a close question on the merits. That, however, is not the issue that we consider when we determine whether we have jurisdiction. To resolve the threshold jurisdictional question we must answer only whether the present class of orders presents an important issue, separable from the merits, that will be irrevocably resolved to the detriment of one of the parties supporting or opposing the order. I strongly disagree with the majority's conclusion that we have no jurisdiction over the merits of an appeal of a district court's order denying or granting a motion to seal a competency hearing, and that an aggrieved party must wait until one side or the other has suffered irrevocable injury before its appeal may be heard.

## I.

The collateral order doctrine established under *Cohen* permits a court of appeals to review a final order that "conclusively determine[s] the disputed question, resolve[s] an

important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154 (9th 2010) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)) (internal quotation marks omitted).

It is uncontested that the first *Cohen* factor — a court's conclusive resolution of a disputed issue — is satisfied in the district court's order denying Guerrero's motion to seal. It would similarly be satisfied by the district court's order sealing a defendant's competency hearing, for the reasons discussed below.

As to the second *Cohen* factor — whether the appeal presents an important issue that is completely separate from the underlying action — the case before us satisfies this requirement, as would an order granting the motion to seal. Although the majority agrees that the sealing issue is distinct from the merits of the government's case against Guerrero and purports to recognize the importance of the issues at stake, I believe that its undervaluation of the interests presented here ultimately leads it to conclude, incorrectly, that Guerrero's appeal fails to satisfy the third *Cohen* factor: that the district court's order is not effectively unreviewable on appeal.

With regard to this third factor — whether the order is effectively unreviewable — the Supreme Court in *Mohawk* held that "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.' " 130 S.Ct. 599, 605 (2009) (quoting *Will v. Hallock,* 546 U.S. 345, 352-53 (2006)). In its analysis of whether Guerrero's appeal satisfies this criterion, the majority considers primarily his claim that the unsealing and denial of the motion to seal implicates his attorney-client privilege. It then rejects this argument based on the Supreme Court's decision in *Mohawk*, in which the Court held that an evidentiary ruling in a civil case that implicates the attorney-client privilege is not

reviewable under the collateral order doctrine. Although Guerrero argues unpersuasively that this privilege is also threatened by the district court's denial of his motion to seal, attorney-client confidentiality is hardly the principal interest affected by the district court's order here; nor is it the principal interest that we must consider in determining whether we have jurisdiction over this appeal, and others like it.

To determine whether we have jurisdiction to review an appeal under the collateral order doctrine, we must look not simply to the case before us, but to the class of cases of which it is a member. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1992); *See also Mohawk,* 130 S.Ct. at 605 ("[O]ur focus is on 'the entire category of cases to which a claim belongs' " (quoting *Digital Equipment*, 511 U.S. at 868)). The interests implicated in a district court's order regarding the sealing of a competency hearing involve recognized and highly regarded social values, and those interests (either Guerrero's or the public's) would be imperiled by a legally erroneous district court order. Accordingly, the order is an appropriate subject for review under the collateral order doctrine. For the purposes of determining *jurisdiction*, it does not matter whether it appears to us that the appellant will ultimately prevail or not; or, to put it differently, whether we believe the particular order to be correct or erroneous. Nor does it matter whether we can conceive of other solutions than sealing all or none.

A district court's order to seal — or to unseal — involves two sides. It involves the defendant's (and his family's and perhaps others') interest in privacy;[2] at the same time it substantially implicates the public's First Amendment right of access. The public's constitutionally-protected right to observe criminal proceedings is viewed as "one of the essen-

---

[2]Depending upon the evidence that the government seeks to introduce at that hearing, it is also plausible that it may seek closure in the interest of the privacy of its own witnesses.

tial qualities of a court of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 566 (1980) (internal quotation marks and citation omitted). Limitations on the public's right of access, therefore, undoubtedly implicate a "substantial public interest."

Competing against this First Amendment right, are the privacy rights of defendants as well as third parties not present in the underlying criminal proceedings, whose personal lives and tragedies are the subject of extensive examination in the course of competency proceedings.[3] This right is similarly recognized as a value of a high order, superceding even the public's right of access under certain circumstances. In particular, the Court has recognized that the public's First Amendment right may be required to yield to the weighty privacy interests of those involved in a criminal proceeding when the subject of disclosure constitutes is a personal history of sexual abuse. *Press-Enterprise Co. v. Superior Court ("Press-Enterprise I")*, 464 U.S. 501, 512 (1984) (observing that the possibility that a member of the venire disclosed during voir dire that she, or a member of her family, had been raped was a "legitimate privacy interest" that must be balanced against the public's right of access). Thus, the Court's own precedents have established that the First Amendment and privacy interests at stake in the closure or failure to close a court pro-

---

[3]The sealing of the competency hearing also implicates the defendant's right to a fair trial. Although this is undoubtedly a value of the highest order, *Press-Enterprise Co. v. Superior Court ("Press-Enterprise I")*, 464 U.S. 501, 512 (1984) ("No right ranks higher than the right of the accused to a fair trial."), rights that "can be protected adequately by post-conviction appellate review" are generally insufficient to fulfill the third *Cohen* requirement. *United States v. No Runner*, 590 F.3d 962, 966 (9th Cir. 2009); *see also Flanagan v. United States*, 465 U.S. 259, 268-69 (1984). The right to a fair trial has been held to be such a right. *United States v. No Runner*, 590 F.3d at 966. Although concern for a defendant's right to a fair trial is insufficient to establish jurisdiction under the collateral order doctrine, if we do have jurisdiction over the collateral appeal, then a ruling on the merits necessarily involves considering Guerrero's fair trial rights as we evaluate the correctness of the district court's order.

ceeding are both values of a high order, albeit competing values.

Neither the privacy of the individuals whose personal histories may be disclosed in the course of a competency hearing, nor the First Amendment rights of those who may be denied access to the contents of such a hearing, will ever be vindicated if a district court improvidently grants or denies a motion to seal and that decision remains immune from collateral review. The First Amendment and privacy rights are competing interests in a motion to seal; thus regardless of whether the hearing is ordered to be sealed or unsealed, one set of interests will be irrevocably damaged if an erroneous order is issued and no immediate review is available. If the district court grants a motion to seal a defendant's competency hearing because a substantial public interest, such as the defendant's right to a fair trial or an individual's right to privacy, requires that information be kept confidential, the public is denied timely access to an important, and possibly dispositive, criminal proceeding. Although the public may gain access to the transcript of these proceedings at some later date, after the trial and the inevitable appeals have concluded, delayed access to such information is nonetheless an "irreparable" injury that continues with "each passing day." *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) (Blackmun, Circuit Judge). Any remedy that may be obtained after the conclusion of the criminal proceeding is therefore insufficient to satisfy the public's First Amendment right to "participate in and serve as a check upon the judicial process." *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty*, 457 U.S. 596, 605 (1982).

Similarly, there is no remedy for the individuals whose personal tragedies and histories of abuse may be revealed in the course of a defendant's competency hearing, or even those family members or others who are the objects of false and malicious accusations. As we have observed on more than one occasion, "[s]ecrecy is a one-way street: [o]nce information is

published, it cannot be made secret again." *In re Copley Press, Inc.*, 518 F.3d at 1025; *see also Islamic Shura Council of S. Cal. v. Fed. Bur. of Invest.*, 635 F.3d 1160, 1164 (9th Cir. 2011). If, upon review after the disclosure of the information at issue, an appellate court determines that the competency hearing should not have been made public in its entirety, the affected individuals have no remedy that will render their private lives private once again. Allowing an order erroneously denying a party's motion to seal to be implemented by denying immediate appellate review, undoubtedly damages the privacy of individuals in a manner that can never be undone. In short, an order granting or denying a motion to seal a competency hearing in a criminal proceeding satisfies all three elements of the *Cohen* test, and this court therefore has jurisdiction over Guerrero's appeal.[4]

## II.

The majority relies heavily on *Mohawk* in its decision to the contrary, but this reliance is misplaced. Neither the

---

[4]Even if we were to treat the two orders — those denying a motion to seal a competency hearing and those granting such a motion — as different classes of orders for the purposes of determining our jurisdiction, and were to consider in this case only whether the *Cohen* factors are satisfied by the district court's order denying a motion to seal, the argument in support of collateral order jurisdiction would be at least as strong. First, it is clear that once information is released, the individual's interest in keeping the information private has been conclusively determined. *See, e.g., In re Copley Press*, 518 F.3d at 1025 ( "An order to unseal thus 'conclusively determine[s]' that the information will be public."). Second, as the majority agrees, the sealing order is an issue that is completely separate from the merits of Guerrero's underlying criminal case. Finally, for the same reasons that the privacy issue is conclusively determined upon the release of an individual's private personal history, the issue is effectively unreviewable on appeal because there is no effective remedy that may be had once the information has been made public. Indeed, as we have already recognized, an appeal challenging an order *unsealing* documents in a criminal proceeding satisfies all three *Cohen* requirements for these precise reasons, and we must similarly recognize that an order *denying* a motion to seal similarly satisfies these elements. *See id.*

express holding of *Mohawk*, nor the rationale upon which it was based, supports a holding that we lack jurisdiction over an order granting or denying the sealing of a competency hearing of a criminal defendant. First, in its decision, the Supreme Court explicitly did not express a view as to whether its holding was intended to prohibit appellate courts from exercising jurisdiction under the collateral order doctrine over orders that pertained to rights *other than* the attorney-client privilege specifically at issue in that case. 130 S.Ct. at 609 n.4. Second, erroneous evidentiary rulings such as that at issue in *Mohawk*, involve rights that can be effectively remedied by "vacating an adverse judgment and remanding for a new trial." *Id.* at 607. As already discussed, reversal of the underlying judgment in the criminal case will not remedy, or even affect, the privacy or First Amendment rights implicated in the sealing order. Third, the alternative means of protecting attorney-client privilege that are available to civil litigants, as recognized by the Court in *Mohawk*, are either insufficient or unavailable to vindicate the privacy and First Amendment rights at issue here. Neither interlocutory appeals, which are available only to civil litigants, 28 U.S.C. § 1292(b), nor non-compliance with the court's order is a feasible option for asserting the rights of members of the public who are denied access to criminal proceedings at the time they occur, or of the individuals whose histories are divulged in the process of a competency hearing and cannot ever thereafter become secret again.[5]

---

[5]The final avenue through which a party may challenge an adverse court order cited by the Court in *Mohawk* is through a petition for a writ of mandamus. *Id.* at 607. Although this option is theoretically available to defendants such as Guerrero, as the majority opinion illustrates even when a court exercises mandamus jurisdiction, relief is warranted only where the district court's order was clearly erroneous. A reversal cannot be granted in cases in which the error of the district court's ruling is not patently obvious but a proper application of the law nonetheless compels a different result. Certainly, after the majority's opinion becomes circuit law, a party will be able to file a petition for mandamus but will rarely, if ever, be able to show a clear error and thus will not be able to obtain mandamus relief.

Lastly, in *Mohawk* the Court expressed a practical concern that permitting appeals under the collateral order doctrine of routine discovery orders that may implicate attorney-client privilege would "swamp the courts of appeal." *Id.* at 608 (internal quotation omitted). As the majority opinion reveals, competency hearings are held in approximately one third of one percent of new criminal cases filed and "motions to *seal* competency proceedings are very rare" and almost never appealed. Maj. Op. at 10282. Even in this case, absent the intervention by the co-defendant Sablan, the motion within the district court would have gone unopposed. Thus, unlike discovery orders, which are a routine part of nearly all civil litigation, competency hearings are rare, and, more important, attempts to seal them due to extensive pre-trial publicity or privacy concerns are almost non-existent. The Supreme Court's concern in *Mohawk* regarding opening the floodgates is therefore wholly inapplicable to orders regarding the sealing of competency hearings. Neither the Court's holding, nor the logic upon which it is based, can justify the mechanical application of *Mohawk* to the present case.

## III.

The majority arrives at its conclusion by making two crucial errors. First, it relies almost totally on the Supreme Court decision in *Mohawk*, as explained above, which has little, if any, relevance to the class of claims we must consider here. Despite the incongruence between the harm caused by the erroneous introduction of material covered by the attorney-client privilege in a civil case and the harm created by an erroneous ruling with respect to the sealing of competency proceedings in a criminal case, which is the true issue in the type of case before us, the majority focuses almost exclusively on Guerrero's argument regarding attorney-client privilege to find that the outcome is compelled by the Court's decision in *Mohawk*. In doing so, it gives little consideration to the other substantial rights that are affected by an order resolving the sealing of a competency hearing.

Second, the majority fails to recognize that the sufficiency of alternatives to sealing is a question that goes to the merits of the particular order granting or denying the motion to seal, and cannot be presumed for the entire class of claims. When the majority finally, and briefly, discusses the important concerns, aside from attorney-client privilege, implicated in orders regarding the sealing of competency hearings, it concludes that the alternatives to sealing would sufficiently protect any defendant's right to a fair trial. Whether these alternatives are sufficient in the particular case is a merits question, to be considered only after it is determined that we do have jurisdiction. Moreover, this is a question that must be decided on a case-by-case basis by considering the particular interests implicated and the feasibility of these other options given the facts and circumstances of the individual case. If we could say that these alternative sufficed in every case, then the district court could never justifiably grant a motion to seal, or it could deny such a motion without the particularized inquiry that the law requires. *Brooklier*, 685 F.2d at 1167 (recognizing that the district court's failure to conduct the particularized inquiry regarding the interests implicated and the sufficiency of alternatives was error). Additionally, because we must also consider within this class of claims the appeal of orders granting a motion to seal, the majority's reference to the sufficiency of alternatives is of no relevance to parties who are erroneously denied access because the court incorrectly deemed those alternatives insufficient in the particular case before it. Such parties are equally deprived of access under the rule the majority establishes today. Whether the alternatives proposed by the district court satisfactorily protect Guerrero's asserted rights — which would additionally include his right to a fair trial once the merits of his sealing motion are considered — is a matter unrelated to whether we have *Cohen* jurisdiction over this entire class of cases, or to whether the privacy interests implicated by such orders may ever be vindicated upon appellate review of the underlying criminal proceeding following their completion.

The importance of the competing rights at stake with respect to motions to seal competency hearings, and the inability to vindicate those rights effectively (on one side if the order is granted and the other if it is denied) after the resolution of the underlying criminal matter, renders this order a proper subject for review under the collateral order doctrine. It would be difficult to imagine another set of rights that we hold in comparably high regard, and for which the injury inflicted by an erroneous judgment would be similarly incurable upon delayed review. For the foregoing reasons, I respectfully dissent from the majority's opinion holding that we do not have jurisdiction under the collateral order doctrine to consider Guerrero's appeal. Although I would hold that jurisdiction over this appeal is proper under *Cohen*, I express no view as to the correctness of the district court's order denying sealing. Because, Guerrero's claim is properly considered under our collateral order jurisdiction, I would dismiss the petition for the writ of mandamus and determine on the merits whether Guerrero's competency hearing should be sealed, rather than conclude merely that, even if the district court erred, the error was not clear as a matter of law.

I dissent.